**UNITED STATES of America, Appellee,**

v.

**M.I.M., Defendant, Appellant.**

**Nos. 90–1674, 90–1720.**

United States Court of Appeals,
First Circuit.

Heard March 5, 1991.
Decided May 17, 1991.

---

John Ward Llambias, by appointment of the Court, Santurce, for defendant, appellant.

Kathleen A. Felton, Atty., Criminal Div., Appellate Section, Dept. of Justice, Washington, D.C., with whom Daniel F. López Romo, U.S. Atty. and Carlos A. Pérez, Asst. U.S. Atty., were on brief, San Juan, P.R., for appellee.

* Of the District of Rhode Island, sitting by designation.

Before TORRUELLA and SELYA, Circuit Judges, and BOYLE,* District Judge.

TORRUELLA, Circuit Judge.

Two issues of jurisdiction are presented here. We conclude that although this court has jurisdiction to consider the appeal, the district court lacked jurisdiction to commence juvenile delinquency proceedings against the minor. Therefore we vacate the adjudication of delinquency status and remand to the district court to dismiss the information without prejudice.

## I.

The first issue is whether a minor may go forward with an appeal of her juvenile delinquency adjudication when her parents have indicated their opposition to the appeal. M.I.M., a juvenile female, was 16 years old at the time of the offense. She is now 17 years old. If her full sentence of 30 months were served, she would reach majority during her detention. Since the filing of this appeal, M.I.M.'s parents have indicated that they do not wish to proceed with the appeal.

We find that under the facts presented here, lack of parental consent to proceed with an appeal does not divest the court of appeals of jurisdiction to entertain the matter. The Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq. ("Act"), does not directly address the issue. The Act does, however, give the juvenile in the federal court system the same rights as an adult defendant in a criminal case, and there is no indication that a juvenile's parents should be able to block the exercise of those rights.

Several provisions in the Act require notice to a juvenile's parents or guardian. See, e.g., 18 U.S.C. § 5032 (requiring notice to the parents of a proposed transfer hearing for prosecution of the juvenile as an adult); 18 U.S.C. § 5033 (providing that an arresting officer who takes a juvenile into custody shall notify the parents or guardian that the child is in custody); 18 U.S.C.

§ 5038 (stating that the district court must inform the juvenile and her parents of the rights relating to the use of the juvenile record). Nowhere, however, is there any requirement of consent by the parents to a particular course of action by the juvenile. Indeed, the Eighth Circuit has held that a minor may waive the privilege against self-incrimination without parental consent. *United States v. White Bear*, 668 F.2d 409, 411–12 (8th Cir.1982).

The Act makes provision for differences of opinion between juveniles and their parents. Section 5034 establishes procedures for assuring that a juvenile is represented by counsel, as required by *In re Gault*, 387 U.S. 1, 36–37, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967). Relevant portions of that section follow:

> The magistrate shall insure that the juvenile is represented by counsel before proceeding with critical stages of the proceedings. Counsel shall be assigned to represent a juvenile when the juvenile and his parents, guardian, or custodian are financially unable to obtain adequate representation. In cases where the juvenile and his parents, guardian, or custodian are financially able to obtain adequate representation but have not retained counsel, the magistrate may assign counsel and order the payment of reasonable attorney's fees or may direct the juvenile, his parents, guardian, or custodian to retain private counsel within a specified period of time.
>
> The magistrate may appoint a guardian ad litem if a parent or guardian of the juvenile is not present, or if the magistrate has reason to believe that the parents or guardian will not cooperate with the juvenile in preparing for trial, or that the interests of the parents or guardian and those of the juvenile are adverse.

18 U.S.C. § 5034. Thus, it is plain that Congress envisioned situations where the interests of parent and minor child might diverge, and it provided a procedure for aiding the juvenile's exercise of her rights in such a case. We see no reason why this result should not apply equally at the appellate level.

The Act does not specifically state that a juvenile has the right to appeal an adjudication of delinquency, but such a right is surely contemplated. Section 5037 states that the district court should proceed according to the provisions of the Bail Reform Act "[w]ith respect to release or detention pending an appeal or a petition for a writ of certiorari after disposition." 18 U.S.C. § 5037. In light of that reference, a juvenile who has been adjudged a delinquent must have the right to appeal the district court's final order.

If a juvenile has a right to counsel, and a right to appeal, she must also have the right to counsel on her first direct appeal. *Penson v. Ohio*, 488 U.S. 75, 84–85, 109 S.Ct. 346, 351–52, 102 L.Ed.2d 300 (1988); *Douglas v. California*, 372 U.S. 353, 355–56, 83 S.Ct. 814, 815–16, 9 L.Ed.2d 811 (1963). The Act's reference in § 5034 to a juvenile's right to representation at "critical stages" also manifests an intent to provide counsel on appeal as well as for trial. Thus, the procedures set out in § 5034 for assuring that a juvenile has counsel should apply equally at the appeal stage.

In sum, nothing in the Juvenile Delinquency Act suggests that the requirement of notice to parents at certain stages of the proceedings is equivalent to control of the juvenile's rights. On the contrary, all indications are that the notice provisions simply aid the juvenile in the exercise of her rights, which are essentially the same as those of an adult. *See White Bear*, 668 F.2d at 412. Accordingly, a juvenile should not need the consent of her parents to take an appeal, just as she does not need the consent of her parents to waive her rights and make a confession. *See id.* at 411–12.

Our decision in this case is simplified by the fact that M.I.M. is so close to the age of majority. We recognize that the issue would be more complex if the minor were a younger child. If it appears that the juvenile and her parents do not agree about the best course of action to pursue, and the court believes that the minor needs additional adult advice in order to have her rights safeguarded, the court should ap-

point a guardian ad litem. That step does not appear necessary in this case. Our holding here, then, is limited to the facts of this appeal; we do not hypothesize as to the result in the case of a younger child.

## II.

■ Having resolved the issue of our own jurisdiction over this appeal, we turn to the question of whether the district court had jurisdiction to conduct the proceedings below. Section 5032 of the Act is titled "Delinquency proceedings in district courts; transfer for criminal prosecution." It sets forth the procedural requirements for instituting juvenile delinquency proceedings and for transferring the juvenile case to an adult criminal prosecution in certain circumstances. In relevant part, § 5032 states categorically:

Any proceedings against a juvenile under this chapter or as an adult shall not be commenced until any prior juvenile records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

18 U.S.C. § 5032.

M.I.M. had a prior juvenile record from a state court in Chelsea, Massachusetts. Neither that record nor any other prior juvenile records were delivered to the district court until the morning of the suppression hearing in this case. No certificate attesting to the absence or unavailability of M.I.M.'s juvenile records was filed. The bench trial began that same afternoon and concluded the following day. We agree with defense counsel's contention that because the record was not received before the filing of the information, the statutory requirement was not met. The appropriate remedy is dismissal of the information without prejudice.

■ Whether a district court correctly interpreted a statute is a question of law receiving de novo review. *Faucher v. Fed-*

*eral Election Comm.,* 928 F.2d 468, 470 (1st Cir.1991). The terms of this statute could hardly be clearer. It states that *"[a]ny proceedings* against a juvenile *shall not be commenced"* until the proper records are received by the court. 18 U.S.C. § 5032 (emphasis added). We can only conclude that the statute means what it says; to state its proposition in a different way, until the court receives at least a good faith proffer of the juvenile records or a certificate as to their absence or unavailability, no proceedings may begin against the juvenile. *Cf. United States v. Cuomo,* 525 F.2d 1285, 1289 (5th Cir.1976) (holding that a different procedural step required by § 5032 was not a prerequisite to filing the complaint where that portion of the statute "does not expressly apply to the commencement of an action against a juvenile.").

The statute defines the steps constituting the commencement of proceedings. Section 5032 states: "The Attorney General shall proceed by information." As juvenile proceedings may only proceed by information, it would seem that the information marks the commencement of the proceedings. Thus, filing of the information must await receipt of the required records. Plainly, this juvenile case did not proceed in accordance with the statute's mandate and therefore the jurisdiction of the district court was not properly invoked.

■ The government urges us to consider a Senate Report[1] which purportedly clarifies the ambiguous provisions of § 5032. We do not, however, find that the statute is ambiguous or in need of clarification. Thus we follow the well-advised maxim of statutory construction: "When we find the terms of a statute unambiguous, judicial inquiry is complete." *Burlington N.R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (quoting *Rubin v. United States,* 449 U.S. 424, 439, 101 S.Ct. 698, 707, 66 L.Ed.2d 633 (1981)). Moreover, the

---

1. S.Rep.No. 225, 98th Cong., 1st Sess. 391–392 (1983), *reprinted in* 1984 U.S.Code Cong. and   Admin.News. pp. 3182, 3531–32.

cited Senate Report seems not to clarify but to contradict the language in § 5032. Where alleged "intent" expressed in a legislative report is in direct conflict with the apparent intent as manifested in the words of the statute themselves, we surely must apply the statute rather than the report; after all, it is the statute, not the report, that was enacted by Congress. *See Cuomo*, 525 F.2d at 1291. Therefore we decline to consider the Senate Report, both because we do not find it necessary to do so, and because it would not change our result if we did.

The two circuits that have considered the significance of § 5032 have reached the same conclusion as we do now. In *United States v. Brian N.*, 900 F.2d 218 (10th Cir.1990), the Tenth Circuit upheld the trial court's dismissal of an information where the juvenile records had not been received by the court, stating that "[t]he statute is clear that the 'proceedings' *begin* with the filing of an information." *Id.* at 221 (emphasis in original). Although *Brian N.* involved a transfer proceeding, the court did not restrict its holding to that situation but rather held broadly that the records must be received before the filing of the information. *See id.* at 221 and n. 2. The Eighth Circuit, in *United States v. Juvenile Male*, 923 F.2d 614, 620 (8th Cir.1991), held the same.

Because the clear directive of § 5032 was not met in this case, we hereby vacate the adjudication of delinquent status.[2] We do not reach the other issues raised by the appellant. The case is remanded to the district court with instructions to dismiss the information without prejudice.

*Vacated and remanded.*

---

2. This case does not present a situation where some, but not all, of the juvenile records were produced in a timely manner, or where a timely certificate of absence or unavailability, regular on its face, was filed, but later proved to be erroneous. We do not reach the questions of whether, or under what circumstances, such errors might require the dismissal or vacation of an adjudication.