# United States Court of Appeals
## For the First Circuit

No. 03-2171

UNITED STATES OF AMERICA,

Appellant,

v.

FEMALE JUVENILE, A.F.S.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Ernesto G. Lopez-Soltero, Assistant U.S. Attorney, with whom
H.S. Garcia, U.S. Attorney, and Sonia I. Torres, Assistant U.S.
Attorney, were on brief for appellant.
    Juan F. Matos De Juan, Assistant Federal Public Defender,
Office of the Federal Public Defender, on brief for appellee.

July 27, 2004

**LIPEZ**, **Circuit Judge**. This case raises important issues of the jurisdiction of the federal courts over juvenile delinquency proceedings and the effect of the juvenile speedy trial provision on the proceedings at issue here.

## I.

Defendant-appellee A.F.S., a seventeen-year-old female juvenile, was arrested and charged by information with juvenile delinquency pursuant to the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § § 5031-5042, arising out of alleged federal narcotics offenses. The district court dismissed the information against A.F.S. on April 10, 2003, holding that the district court lacked subject matter jurisdiction over juvenile delinquency proceedings. The government appeals from the district court's dismissal of the information, arguing that the court had subject matter jurisdiction over the prosecution of A.F.S. for juvenile delinquency pursuant to the FJDA. In response, A.F.S. argues that the district court correctly dismissed the information and that, even if it did not, we should uphold the dismissal based on the government's failure to bring A.F.S. to trial within the thirty-day period set forth in the speedy trial provision of the FJDA, 28 U.S.C. § 5036.

We hold that the district court erred in dismissing the information for lack of jurisdiction. However, we affirm the decision of the district court on different grounds, holding that

-2-

the delay between the dismissal of the information and the discharge of A.F.S. violated the defendant's right to a speedy trial under the FJDA.

## II.

On March 16, 2003, A.F.S., a seventeen-year-old female juvenile, arrived at the Luis Munoz Marin International Airport, in Carolina, Puerto Rico, from St. Maarten, Netherlands Antilles. Upon her arrival, she was referred to a U.S. Bureau of Customs and Border Protection (BCBP) Secondary Inspection. Based on her answers to routine customs questions, the BCBP inspectors suspected A.F.S. of being an internal narcotics courier. They conducted a voluntary X-ray examination of her abdominal area, which indicated the presence of drugs in her body. A.F.S. was arrested and transported to a medical facility where a second X-ray examination also yielded positive results. On March 17, 2003, A.F.S. allegedly expelled 12 pellets, or 96 grams, of a substance containing a detectable amount of heroin, a quantity that is consistent with drug trafficking.

On March 18, 2003, a special agent with the Bureau of Immigration and Customs Enforcement (BICE) filed a criminal complaint against A.F.S., accusing her of juvenile delinquency based on her alleged drug offenses. On March 21, the United States filed an information charging A.F.S. with juvenile delinquency, in violation of 18 U.S.C. § 5032, arising from her alleged importation

of heroin and possession with intent to distribute.[1]  The information charged that the defendant's actions would have constituted offenses punishable under the Controlled Substances Act, 21 U.S.C. § 841(a)(1), and the Controlled Substances Import and Export Act, 21 U.S.C. § 952(a), if she had been an adult.[2]  On the same date, the United States Attorney filed a certification, which is required by 18 U.S.C. § 5032 as a precondition to federal prosecution of juvenile delinquency.  The certification stated that the offenses charged against A.F.S. were "serious crime[s] in relation to drug trafficking activities, as described in [21 U.S.C. § 952] which are at the core of the federal interest for prosecution since it is a case of drug importation for which federal authorities have primary jurisdiction."

Meanwhile, at a preliminary hearing held on March 18, 2003, the United States magistrate judge ordered A.F.S. committed to a juvenile facility pending defense counsel's efforts to secure a third party custodian who could guarantee her appearance at future court proceedings.  At that hearing, the government filed a motion seeking authorization to obtain photographs and fingerprints

---

[1]Juvenile proceedings are commenced by the filing of an information rather than by indictment.  See 18 U.S.C. § 5032.

[2]The FJDA defines "juvenile delinquency" as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult or a violation by such a person of section 922(x)."  18 U.S.C. § 5031.

of the defendant.  A.F.S. opposed the motion, and it was denied by the magistrate judge on March 21.  On March 26, the magistrate judge determined that no conditions of release existed that would reasonably assure the defendant's timely appearance at further court proceedings and ordered that she be detained in a juvenile facility pending adjudication.[3]

On April 10, 2003, a status conference was held in the chambers of the district court.  The court informed the parties that a juvenile may not be tried as a juvenile before a federal district court because "the federal government does not deal with juvenile delinquents."  It explained that the government was required either to move to transfer A.F.S. to adult status for prosecution in the district court or to transfer the case to state authorities for prosecution under state law.  The court issued a separate written order stating that "[t]he information filed by the government, charging the juvenile to have committed an act of juvenile delinquency, is stricken from the record."  The order also gave the government five days to decide whether to "begin criminal proceedings by requesting a transfer [of A.F.S.] to adult status."

[3]18 U.S.C. § 5034 provides that where a juvenile has not been discharged before his initial appearance before the magistrate judge, the magistrate judge shall release the juvenile to his parents, guardian, custodian, or other responsible party . . . unless the magistrate judge determines, after hearing, at which the juvenile is represented by counsel, that the detention of such juvenile is required to secure his timely appearance before the appropriate court or to insure his safety or that of others.

Notwithstanding the dismissal of the information, the court did not discharge A.F.S. at that time.

The government chose not to initiate transfer proceedings. Instead, on April 11, it filed a motion for reconsideration of the dismissal of the information and a motion requesting a trial date on or before April 15, 2003, "in order to comply with the speedy trial requirement of [18 U.S.C. § 5036]." The defendant did not oppose either motion.

On April 29, 2003, A.F.S. filed a motion entitled "Sealed Request for Dismissal of All Pending Prosecutions and Request for Immediate Order of Release." The motion claimed that A.F.S. had been detained in federal custody for more than thirty days without being brought to trial (she had been in custody since March 16), in violation of the speedy trial provision of the FJDA, 18 U.S.C. § 5036. The United States filed a response, arguing that the speedy trial period had ended on April 10, 2003, when the district court dismissed the information charging A.F.S. with juvenile delinquency, and would not commence again until the district court ruled on the government's motion for reconsideration. The government also noted that an INS detainer had been lodged against A.F.S.

On May 12, 2003, another magistrate judge issued a report and recommendation addressing the defendant's motion for dismissal

-6-

and release on speedy trial grounds.  He recommended that the motion be granted, explaining that

> [a]lthough the government's unopposed motion for reconsideration was filed within the juvenile speedy trial's thirty day period, the fact remains that the trial did not commence within thirty (30) days of the detention.  Section 3036's strict language, in turn, precludes the Court from extending the speedy trial clock based on the filing of the Government's motion to reconsider.

In a footnote to his report, the magistrate judge observed that "[u]pon review of [the government's motion for reconsideration], the undersigned is of the opinion that the same has merit, and should have been granted."[4]

On May 14, 2003, the government filed written objections to the magistrate judge's report and recommendation.  Finding support for its position in the language of § 5036's speedy trial provision, the government argued that the "thirty day limitation deals specifically with days the juvenile has been detained pending trial [and] since the information was dismissed on April 10 the juvenile has not been detained pending trial."  Thus, the government again argued that because the district court had dismissed the information on April 10, 2003, "no speedy trial violations have occurred in the instant case and as such the juvenile may not be released."  A.F.S. filed an opposition to the government's objections on May 19, 2003.

---

[4]When the magistrate judge issued his report and recommendation, the government's motion for reconsideration was still pending before the district court.

The district court set oral arguments on all of the pending motions for the morning of May 27, 2003 and scheduled a transfer hearing before a magistrate judge for that afternoon. At the motions hearing, the district court reiterated its prior order to strike the information from the record, explaining that it

> charge[d] a felony and it cannot be filed against a juvenile unless she is transferred to adult status and she waives her right to have a Grand Jury find probable cause and bring an indictment. The juvenile has to be subject to a transfer hearing. The government cannot proceed against her by means of an information charging a felony.

The district court denied all pending motions, including the government's motion for reconsideration and A.F.S.'s motion requesting dismissal of all pending prosecutions and an immediate order of release. It noted, however, that "[t]he Court is not dismissing the complaint." It stated that if, following the transfer hearing, "the Magistrate Judge finds that the juvenile is not to be transferred to adult status, then the complaint may be dismissed because the thirty days have expired and the juvenile will be released." The government again declined to seek to transfer A.F.S. to adult status, and the magistrate judge cancelled the transfer of status hearing scheduled for that afternoon. The district court issued a judgment of discharge, also on May 27, 2003, which ordered the discharge of A.F.S. on the ground that "[t]he Court has dismissed the charges in view of the fact that the government did not request that the juvenile be transferred to

adult status, pursuant to 18 U.S.C. § 5031 <u>et seq.</u>"  This appeal by the government followed.

## III.

The United States argues that the district court erred in ordering dismissal of the information filed against A.F.S. on the ground that it lacked subject matter jurisdiction over juvenile proceedings, at least where the charged offense would be a felony if committed by an adult.  Because this issue turns on the district court's interpretation of the Federal Juvenile Delinquency Act, our review is plenary.  <u>See</u> <u>United States</u> v. <u>M.I.M.</u>, 932 F.2d 1016, 1019 (1st Cir. 1991) ("Whether a district court correctly interpreted a statute is a question of law receiving de novo review.").

Section 5032 of the FJDA sets forth the procedures for trying an individual under eighteen years of age as a juvenile in federal court or for transferring such a juvenile to adult status for the purpose of federal criminal prosecution.  This section provides, in relevant part, that a district court has jurisdiction over a juvenile if "the Attorney General, after investigation, certifies to the appropriate district court of the United States that . . . (3) the offense charged is . . . an offense that is described in [certain enumerated sections] of the Controlled Substances Act . . . [or] of the Controlled Substances Import and Export Act . . . and that there is a substantial Federal interest

in the case or the offense to warrant the exercise of Federal jurisdiction."  18 U.S.C. § 5032.[5]  We have held, in line with the majority of the circuits, that the Attorney General's certification of a "substantial federal interest" is an act of prosecutorial discretion that is shielded from judicial review.  United States v. Smith, 178 F.3d 22, 25 (1st Cir. 1999).

"Once federal jurisdiction has attached, juvenile delinquency proceedings ensue unless the court transfers the juvenile for prosecution as an adult."  Id. at 25.  Section 5032 includes both permissive and mandatory transfer provisions.  Upon the government's motion, the district court may transfer a juvenile "if such court finds, after hearing, such transfer would be in the interest of justice," in light of six specific factors set forth in § 5032.[6]  Under the mandatory transfer provision of § 5032, a

_____

[5]Applying a presumption of exclusive state jurisdiction over juvenile offenses, 18 U.S.C. § 5032 provides for the commencement of juvenile proceedings in federal court only where the Attorney General certifies to the appropriate district court that
     (1) the juvenile court or other appropriate court of a
     State does not have the jurisdiction or refuses to assume
     jurisdiction over said juvenile with respect to such
     alleged act of juvenile delinquency, (2) the State does
     not have available programs and services adequate for the
     needs of juveniles, or (3) the offense charged is a crime
     of violence that is a felony or an offense described in
     [certain enumerated sections of the] Controlled
     Substances Act . . . [or] of the Controlled Substances
     Import and Export Act . . . and that there is a
     substantial Federal interest in the case or the offense
     to warrant the exercise of Federal Jurisdiction.
18 U.S.C. § 5032.

[6]Under the discretionary transfer provision of 18 U.S.C. § 5032, the district court is required to consider and make findings

-10-

district court <u>shall</u> transfer a juvenile if three factors are present: 1) the juvenile committed the act underlying the charged offense after his sixteenth birthday; 2) the charged offense is a felony that has as an element the use of physical force or by its nature involves the risk of physical force, or is an offense specifically enumerated in the paragraph; and 3) the juvenile has previously been found guilty of a crime that would satisfy factor 2). 18 U.S.C. § 5032. In the case of both permissive and mandatory transfers, however, the Attorney General must move to transfer the juvenile to adult status before the district court considers the issue. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Juvenile Male No. 1</u>, 47 F.3d 68, 69 (2d Cir. 1995) (government was precluded from arguing on appeal that the district court would have been required to grant a motion for mandatory transfer of juvenile to adult status where it never filed such a motion below). "Juvenile adjudication is presumed appropriate unless the government establishes that prosecution as an adult is warranted." <u>Id.</u> at 71. This statutory presumption in favor of juvenile proceedings reflects the purpose of the FJDA to "remove juveniles from the

---

as to each of the following factors in assessing whether a transfer would be in the interest of justice: 1)"the age and social background of the juvenile"; 2) "the nature of the alleged offense"; 3) "the extent and nature of the juvenile's prior delinquency record"; 4) "the juvenile's present intellectual development and psychological maturity"; 5) "the nature of past treatment efforts and the juvenile's response to such efforts"; and 6) "the availability of programs designed to treat the juvenile's behavioral problems."

-11-

ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation." United States v. Brian N., 900 F.2d 218, 220 (10th Cir. 1990) (citations omitted).

In this case, the Attorney General properly certified that the offenses charged were described in an enumerated section of the Controlled Substances Act, 21 U.S.C. § 841, and the Controlled Substances Import and Export Act, 21 U.S.C. § 952(a), and that there was a sufficiently substantial federal interest in the case to warrant federal jurisdiction. Thus, federal jurisdiction attached.[7] Moreover, for the reasons set forth above, the government was not required to seek a transfer of A.F.S. to adult status in order to prosecute the case against her. The district court's conclusion that it lacked jurisdiction over A.F.S. with respect to her alleged acts of juvenile delinquency was an error of law.

## IV.

Our conclusion that the district court erred in dismissing the information for lack of subject matter jurisdiction does not end our inquiry. A.F.S. argues that even if the district

---

[7]On appeal, the government argues that federal jurisdiction was also established in this case on the alternative ground that Puerto Rico does not have authority to prosecute individuals accused of importing controlled substances into the United States. See 18 U.S.C. § 5032. Whatever its merits, this jurisdictional argument is not before us as it was not a basis for the Attorney General's certification.

court erred in its jurisdictional dismissal, we must affirm on the alternative ground that the court, consonant with the recommendation of the magistrate judge, should have dismissed the information for violation of the speedy trial provision of the FJDA, 18 U.S.C. § 5036. We consider de novo the legal question of whether the detention of A.F.S. exceeded the thirty-day period permitted under the FJDA's speedy trial provision, requiring dismissal of the information and the defendant's immediate release. United States v. Santiago-Becerril, 130 F.3d 11, 15 (1st Cir. 1997) ("This court reviews the disposition of [an adult Speedy Trial Act] issue for clear error as to factual findings and de novo as to legal rulings."); United States v. Sealed Juvenile 1, 192 F.3d 488, 490 (5th Cir. 1999) (finding that "the same twin standard of review" applicable under the adult Speedy Trial Act also applies to the speedy trial provision of the FJDA because the "underlying purpose of the statutes are identical").[8]

Section 5036 of Title 18 United States Code provides:

> If an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed on motion of the alleged delinquent or at the direction of the court, unless the Attorney General shows that additional delay was caused by the juvenile or his counsel, or consented to by the juvenile and his counsel, or would be in the interest of justice in the particular case. Delays attributable solely to court calendar congestion may not be considered in the interest of justice. Except in extraordinary

---

[8]See the Appendix for a chronology of dates and events that are important to the speedy trial analysis in this case.

circumstances, an information dismissed under this section may not be reinstituted.

A.F.S. argues that her detention for speedy trial purposes began on March 16, 2003, when she was detained by customs agents at the airport, and concluded when she was discharged on May 27, 2003.[9] She acknowledges that the four-day period between March 18-21, 2003, during which the district court considered and ultimately rejected the government's request to photograph and fingerprint A.F.S., could be considered excludable from the speedy trial period because A.F.S. arguably consented to the delay by filing an opposition to the motion.[10] Moreover, she concedes that the speedy trial clock was tolled between April 29, 2003 and May 27, 2003, pending the district court's consideration of her motion requesting dismissal of all pending prosecutions and an immediate order of release. Even excluding those two time periods, however, A.F.S. argues that she was detained for forty days, ten days over the limit set by § 5036, without being brought to trial.

The government, on the other hand, claims that after the district court dismissed the information on April 10, 2003, A.F.S.

---

[9]A.F.S. states that she was discharged on May 29, 2003. However, the district court's judgment of discharge was issued and filed on May 27, 2003.

[10]We take no position on whether the defendant's opposition to the government's pre-trial motion constituted consent to the delay occasioned by that motion and hence tolled the speedy trial clock.

remained in custody but was not "in detention pending trial" for an alleged act of juvenile delinquency and therefore was not subject to the speedy trial provision of § 5036.  Accordingly, the government argues that only the twenty-one days between the initial detention of A.F.S. on March 16, 2003 and the dismissal of the information on April 10, 2003 (excluding the four days pending consideration of the government's motion to obtain fingerprints and photographs) should be counted towards the thirty-day limit.

We agree with the government that the protections of § 5036 are not triggered by every detention of a juvenile but only by the "detention pending trial" of an "alleged delinquent."  The parties do not dispute that the thirty-day time limitation of the speedy trial provision of the Juvenile Delinquency Act begins to run when the juvenile is taken into federal custody pending trial on federal delinquency charges.  See, e.g., United States v. Doe, 365 F.3d 117 (9th Cir. 2004); United States v. Three Male Juveniles, 49 F.3d 1058, 1063 (5th Cir. 1995); United States v. Wong, 40 F.3d 1347, 1371 (2d Cir. 1994).  If the juvenile is not turned over to state authorities following her arrest, the "Attorney General shall proceed by information" against the juvenile in an appropriate district court.[11] 18 U.S.C. § 5032.  The

---

[11]If a juvenile is charged with certain class B or C misdemeanors, however, the government need not proceed by information but may initiate delinquency proceedings before a magistrate judge by filing a violation notice or complaint. 18 U.S.C. § § 3401(g) & 5032.

speedy trial clock continues to run, with certain specified exceptions, until the alleged delinquent "is brought to trial." Id. § 5036.

If an information is dismissed, however, on the initiative of either the government or the court, the Attorney General may not "proceed" against the juvenile. See 18 U.S.C. § 5032. With the Attorney General's authority to proceed against the juvenile removed by the dismissal of the information, and in the absence of any alternative basis for detention, the juvenile should be discharged from custody and released. In this case, however, A.F.S. was not released from federal custody when the district court dismissed the information against her, but remained in detention until the district court issued a judgment of discharge on May 27, 2003. We share the defendant's concern, first raised in her motion opposing the government's objection to the magistrate judge's report and reiterated at oral argument, that "the government's assertion that the minor is not detained pending Trial, begs the question of the legality of the minor's custody."

In its reply brief, the government appears to concede the dubious legal authority for A.F.S.'s detention, stating bluntly that "the juvenile was under custody but not pending trial, actually she would have been released if such order would have been sought by then." Perhaps recognizing the inadequacy of this response to the question of why A.F.S. was not released immediately

-16-

after the district court dismissed the information against her, counsel for the government claimed at oral argument that A.F.S. remained in administrative custody following the dismissal of the information pursuant to an INS detainer that had been filed against her. However, an INS detainer is not, standing alone, an order of custody. Rather, it serves as a request that another law enforcement agency notify the INS before releasing an alien from detention so that the INS may arrange to assume custody over the alien. 8 C.F.R. § 287.7(a);[12] see also Zolicoffer v. United States Dep't of Justice, 315 F.3d 538, 540 (5th Cir. 2003) (collecting cases and agreeing with the majority of circuits that absent an order of deportation, an INS detainer does not create custody in the INS).[13] In this case, the government has not shown that A.F.S.

---

[12]8 C.F.R. § 287.7(a) provides, in relevant part:
A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to the release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

[13]On the other hand, a detainer, together with a final order of removal, may suffice to place the alien in the legal custody of the INS even if the alien is physically detained somewhere else. See, e.g., Simmonds v. INS, 326 F.3d 351, 354 (2d Cir. 2003) (final order of removal is sufficient to establish INS custody for purposes of habeas proceedings). The record does not indicate whether A.F.S. had been charged with an immigration offense or ordered deported at the time that the district court dismissed the information charging her with juvenile delinquency.

-17-

was held in administrative custody under the authority of the INS following the dismissal of the information on April 10.[14]

Instead, the district court apparently believed that the original complaint remained in force after it dismissed the information, providing the legal basis for the anticipated transfer proceedings and for the continued detention of A.F.S.[15]  As noted, however, "juvenile proceedings may only proceed by information," not by criminal complaint. M.I.M., 932 F.2d at 1019; see United States v. Hayes, 590 F.2d 309, 310 (9th Cir. 1979) ("The filing of a juvenile information is an essential step in the process by which the qualifying juvenile can be proceeded against as a juvenile or ultimately, following the grant of a transfer motion, as an adult.").  Moreover, the original complaint was superceded by the information filed on March 21, 2003, and thus was no longer in

_____

[14]Counsel for the government noted at oral argument that the INS did assume custody of A.F.S. after she was discharged on the offense of juvenile delinquency on May 27, 2003, and successfully initiated deportation proceedings against her.

[15]At a hearing on the parties' pending motions held on May 27, 2003, the district court reaffirmed its prior order striking the information from the record but noted that "the Court [was] not dismissing the complaint," suggesting that under the authority of that original charging document, "[c]riminal prosecution [could] begin by holding a hearing to transfer the juvenile to adult status."  Likewise, in her motion requesting dismissal of all pending prosecutions and an order of immediate release, A.F.S. noted that "[a]s the Matter stands, the only charging instrument is the initial *Complaint*.  However, the existence of that Complaint is questionable since the filing of the *Information* necessarily implies the dismissal of the *Complaint* as a charging document and its succession, as a new proceeding, of the prosecution of the *Information*." (emphasis in the original).

-18-

existence when the information was dismissed on April 10, 2003.[16]

See Wayne R. LaFave et al., 1 Criminal Procedure § 1.3(n) (2d ed.

1999) (noting that "like the indictment, the information is a

charging instrument which replaces the complaint"); see also United

States v. Funk, 412 F.2d 452, 455 (8th Cir. 1969) (information

supercedes previously filed criminal complaint).  Therefore, the

district court's reliance on the authority of a pre-existing

complaint as the basis for the continued prosecution and detention

of A.F.S. was a legal error.[17]

Nevertheless, the government relied on the district

court's error in continuing to proceed against and assert custody

over A.F.S. after the dismissal of the information on April 10,

2003.  As the Supreme Court has explained with regard to the Sixth

Amendment's guarantee of a speedy trial, "the Speedy Trial Clause's

---

[16]Indeed, in its Notice to the Court, filed along with the information on March 21, 2003, the government informed the district court that "[t]oday under seal the United States is filing an Information against the same juvenile defendant which supercedes the previously filed complaint."

[17]When the district court struck the information from the record, it invited the government to move to transfer A.F.S. to adult status within five days.  Instead of accepting that invitation, the government filed a motion for reconsideration and a motion requesting a trial date before April 15, 2003 "in order to comply with the speedy trial requirement of [18 U.S.C. § 5036]." At no time did the government request a stay of the court's dismissal order pending resolution of the motion for reconsideration, apparently understanding that A.F.S. would remain in custody.  In fact, as we have noted, A.F.S. was not released from federal detention or transferred to the custody of the INS prior to her discharge on May 27, 2003.

core concern is impairment of liberty." United States v. Loud Hawk, 474 U.S. 302, 312 (1986). Thus, "when no indictment is outstanding, only the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision of the Sixth Amendment." Id. at 310 (citation and quotation marks omitted) (emphasis in the original). The statutory speedy trial provision of the FJDA is similarly concerned with the impairment of liberty,[18] in particular the impairment of liberty imposed by incarceration. Unlike the adult Speedy Trial Act, the FJDA does not include an arrest-related speedy trial provision but applies only to the time during which the juvenile is detained pending trial.[19] In this case, A.F.S. remained in federal detention after the dismissal of the information on April 10 notwithstanding the apparent absence of any

---

[18]The Senate Report to the 1974 bill that amended the 1948 FJDA to its present form stated that a central purpose of the amended act was to "provide for the unique characteristics of a juvenile proceeding and the constitutional safeguards fundamental to our system of justice." It further explained that "[a]t a time when many states have already or are re-examining their own juvenile codes, it is essential that the Act be a model code for juveniles, combining the unique benefits of the juvenile system with virtually all of the constitutional rights guaranteed an adult in a criminal prosecution." S. Rep. No. 93-1011, reprinted in U.S.C.C.A.N. 5283, 5312.

[19]The drafters of the FJDA's speedy trial provision initially adopted but later rejected a provision that would have required a trial within thirty days of a juvenile's arrest, irrespective of whether or not the arrested juvenile was detained during that time. Compare S. Rep. No. 93-1011, reprinted in 1974 U.S.C.C.A.N. 5283, 5321 (discussion of proposed amendment to section 5036), with 18 U.S.C. § 5036.

legal basis for her continued custody. Under these circumstances, it would be incongruous to accept the government's argument that the speedy trial provision did not apply after April 10. Therefore, we conclude that, for all practical purposes, A.F.S. was "in detention pending trial" from the time that she was taken into federal custody on March 16, 2003, until she was discharged of the offense of juvenile delinquency on May 27, 2003.

The government further argues, however, that even if § 5036 applies to the period of time between the dismissal of the information and the judgment of discharge, the failure to bring A.F.S. to trial within thirty days of her arrest did not constitute a speedy trial violation because the relevant delays were excludable from the computation of the thirty days within which trial for the offense of juvenile delinquency must commence. As A.F.S. acknowledges, the period of time between April 29, 2003 and May 27, 2003, pending the court's consideration of her motion requesting dismissal of all pending prosecutions and an immediate order of release, was properly excluded from the speedy trial period because it was "caused by the juvenile or [her] counsel." 18 U.S.C. § 5036. The prior delay, from April 11, 2003 to April 29, 2001, is attributable to the government's motion for reconsideration of the district court's order dismissing the information for want of subject matter jurisdiction and its motion requesting a trial date on or before April 15. Because that delay

-21-

was not caused or consented to by A.F.S. or her counsel, it is excludable from the thirty-day speedy trial period only if it was "in the interest of justice."[20] Id.

We do not agree with the government that the "interest of justice" exception to the strict application of the thirty-day requirement of the FJDA's speedy trial provision should remove from the speedy trial count the eighteen days between the filing of the government's motion for reconsideration and motion requesting a trial date, and the filing of the defendant's motion requesting dismissal of all pending prosecutions and an immediate order of release. It is true, as the government notes, that courts have held that the time between the government's motion to transfer a juvenile to adult status and the court's disposal of that motion tolls the thirty-day speedy trial period. See, e.g., Sealed Juvenile 1, 192 F.3d at 492; Wong, 40 F.3d at 1371; United States v. Romulus, 949 F.2d 713, 716 (4th Cir. 1991). Even if ultimately unsuccessful, such motions may serve the interest of justice by enabling the government to "distinguish defendants who would benefit from the juvenile system from those who should be properly transferred to adult proceedings." Sealed Juvenile 1, 192 F.3d at

---

[20]Defense counsel explained at oral argument that he chose not to oppose the government's motions so that A.F.S. would not be found to have consented to the delay occasioned by the filing and consideration of those motions, thus tolling the speedy trial clock. Again, we take no position on whether the clock would have been so tolled. See supra note 10.

-22-

491. Similarly, an appeal from the district court's denial of a motion to transfer was found to be in the interest of justice where the delay was caused by "the government's valid attempt to ensure that the district court did not abuse its discretion in refusing to transfer the defendant." United States v. Doe, 94 F.3d 532, 536 (9th Cir. 1996).

In each of those cases, however, the juvenile was lawfully detained pending trial when the government filed the motion or appeal that caused an additional delay. By contrast, so far as we can tell from this record, A.F.S. should have been released immediately following the district court's dismissal of the information on April 10, 2003. Cf. United States v. MacDonald, 456 U.S. 1, 9 (1982) (holding that constitutional speedy trial guarantee is no longer applicable following the dismissal of an indictment because "[a]fter the charges against him have been dismissed, a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation") (internal quotation marks omitted). Instead, A.F.S. remained in detention from April 10, 2003 to May 29, 2003 pursuant to no valid legal authority at all. As incongruous as it would be to find that the speedy trial provision does not apply to the period of time following the district court's dismissal of the information, it would be even more incongruous to use that provision's "interest of justice" exception to the running of the thirty-day speedy trial requirement

-23-

to avoid the strict application of that requirement to a juvenile whose custody was without lawful authority. Hence, under the circumstances of this case, we conclude that the interest of justice exception does not excuse from the thirty-day speedy trial count the eighteen days between the filing of the government's motions for reconsideration and for a trial date, and the filing of the defendant's motion requesting dismissal of all pending prosecutions and an immediate order of release. Accordingly, we hold that A.F.S.'s speedy trial rights have been violated and the information against her must be dismissed with prejudice.[21]

## V.

For the foregoing reasons, we affirm the decision of the district court on the alternative speedy trial ground. The information against A.F.S. is dismissed with prejudice pursuant to the speedy trial provision of the FJDA, 18 U.S.C. § 5036.[22]

**So ordered**.

---

[21]"Except in extraordinary circumstances, an information dismissed under [the FJDA's speedy trial provision] may not be reinstated." 18 U.S.C. § 5036. We find no such extraordinary circumstances here.

[22]This judgment does not foreclose the prosecution of the defendant as a juvenile by territorial authorities under Puerto Rico's criminal laws pertaining to drug offenses.

**APPENDIX**

*Speedy Trial Chronology*

March 16, 2003.  A.F.S. is arrested and detained in federal custody.

March 18, 2003.  Government files criminal complaint against A.F.S., charging her with juvenile delinquency.

March 18, 2003.  At a preliminary hearing, magistrate judge orders A.F.S. committed to a juvenile facility pending efforts to secure third-party custodian.

March 18, 2003.  Government files motion seeking authorization to obtain juvenile's fingerprints and photographs.

March 20, 2003.  A.F.S. opposes government's motion.

March 21, 2003.  Magistrate judge denies government's motion to obtain fingerprints and photographs.

March 21, 2003.  Government files information charging A.F.S. with juvenile delinquency based on her alleged drug offenses.

March 21, 2003.  Government files certification.

March 26, 2003.  Magistrate judge finds that detention is required to secure presence of A.F.S. at court proceedings and orders her detained in juvenile facility pending adjudication.

April 10, 2003.  At a status conference, district court issues order dismissing information. It grants government five days to decide whether to seek to transfer A.F.S. to adult status.

April 11, 2003.  Government files motion for reconsideration of district court's order dismissing the information and motion requesting trial by April 15, 2003.

April 29, 2003.  A.F.S. files motion requesting dismissal of all pending prosecutions and immediate order of release based on violation of FJDA's speedy trial provision.

May 12, 2003.  Magistrate judge issues magistrate judge's report and recommendation recommending dismissal on speedy trial grounds.

May 14, 2003.  Government files objections to magistrate judge's report and recommendation.

May 19, 2003.  A.F.S. opposes government's objections.

May 27, 2003.  Following oral arguments, district court dismisses all pending motions. Government

                    declines to seek transfer of A.F.S. to adult
                    status.
May 27, 2003.      District court enters judgment of discharge.