**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4381

NJB, a Male Juvenile,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-96-6)

Argued: October 28, 1996

Decided: January 14, 1997

Before NIEMEYER and MOTZ, Circuit Judges, and DOUMAR,
Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Niemeyer and Senior Judge Doumar joined.

_____

**COUNSEL**

**ARGUED**: Martin Patrick Sheehan, SHEEHAN & NUGENT, Whee-
ling, West Virginia; James T. Kratovil, KRATOVIL LAW OFFICES,
Charles Town, West Virginia, for Appellant. Paul Thomas Camilletti,
Assistant United States Attorney, Wheeling, West Virginia, for
Appellee. **ON BRIEF:** William D. Wilmoth, United States Attorney,
Wheeling, West Virginia, for Appellee.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

A juvenile defendant -- "NJB" -- appeals the district court's order permitting the Government to prosecute him in federal court as an adult. NJB maintains that the district court lacked jurisdiction to issue its order because of two alleged deficiencies in the Government's certification of his case: the certification does not charge him with committing a violent felony, and does not state a substantial federal interest in his case. Alternatively, NJB asserts that the district court erred in concluding that his juvenile records were complete and that he had previously been found guilty of an act that would constitute a crime of violence if committed by an adult. The district court properly exercised jurisdiction in this case and did not err in any of its related rulings. We therefore affirm.

I.

On February 29, 1996, the Government moved pursuant to 18 U.S.C. § 5032 (1994) to proceed against NJB in federal court as an adult. On that same date, the Government filed a certification, as required by § 5032, stating that the offense charged against NJB "is a crime of violence that is a felony" and that "there is a substantial federal interest in the offense to warrant the exercise of Federal jurisdiction." The Government subsequently filed a one-count information charging that NJB killed David Brown in furtherance of a continuing criminal enterprise in violation of 21 U.S.C. § 848(e)(1)(A) (1994).

NJB moved to dismiss the information, alleging that the district court did not have subject matter jurisdiction over the action and that the Government had not properly certified that his juvenile records were complete. The district court held a hearing to determine whether to transfer NJB to federal court and try him as an adult. The court heard argument from the parties, and testimony from several witnesses. The district court then issued a well-reasoned order, denying NJB's motion to dismiss, and granting the Government's motion to proceed against him as an adult.

2

II.

Initially, NJB asserts that the district court lacked jurisdiction over him. Federal jurisdiction over a juvenile offender is established under 18 U.S.C. § 5032, which provides that criminal proceedings against minors may be initiated only on a certification from the Attorney General of the United States. This responsibility has been delegated to the United States Attorneys. See 28 C.F.R. § 0.57 (1996). The certification must state a "substantial Federal interest in the case" and one of three circumstances: 1) the state juvenile court does not have, or has refused, jurisdiction; or 2) the state does not have available adequate programs for juveniles; or 3) "the offense charged is a crime of violence that is a felony," or an enumerated drug or weapons offense. 18 U.S.C. § 5032 (first paragraph).

In this case, the United States Attorney for the Northern District of West Virginia certified that NJB was charged with a violent felony, specifically a violation of 21 U.S.C. § 848(e), and that there was a substantial federal interest justifying federal prosecution of NJB's case. We recently held judicially reviewable the Attorney General's certification, including his findings of a crime of violence and of a substantial federal interest. See United States v. Juvenile Male #1, 86 F.3d 1314, 1319-21 (4th Cir. 1996). Therefore, we turn to NJB's arguments concerning the sufficiency of the certification.

A.

NJB first argues that the certification was insufficient because § 848(e) is not a "crime of violence." NJB maintains that § 848(e) does not constitute a separate, violent offense, but is instead a penalty enhancement for the non-violent offense created by 21 U.S.C. § 848(c). We review de novo this question of statutory interpretation. See United States v. Hall, 972 F.2d 67, 69 (4th Cir. 1992).

Section 848(e)(1) provides:

> (e) Death Penalty
>
> (1) In addition to the other penalties set forth in this section--

3

(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills . . . an individual . . . shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death; and

(B) any person, during the commission of, in furtherance of, or while attempting to avoid apprehension, prosecution or service of a prison sentence for, a felony violation of this subchapter or subchapter II of this chapter who intentionally kills . . . any Federal, State or local law enforcement officer engaged in, or on account of, the performance of such officer's official duties . . . shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

21 U.S.C. § 848(e)(1).

NJB asserts that because § 848(e)(1) applies "[i]n addition to other penalties set forth in this section," § 848(e) must set forth a penalty enhancement, not a separate crime. NJB also points to the title of the section -- "Death Penalty" -- as proof that § 848(e)'s sole purpose is to apply a new penalty to certain § 848(c) "continuing criminal enterprise" ("CCE") violations.

We begin our analysis with the Supreme Court's decision in Garrett v. United States, 471 U.S. 773 (1985). In Garrett the Supreme Court considered whether § 848, as originally enacted (which at that time only outlawed CCE violations and included none of the language at issue in this case), created a substantive offense separate from its predicate offenses, and whether a subsequent CCE prosecution violated the Double Jeopardy Clause. In holding that § 848 was a separate offense, Garrett directed that analysis of whether a statute creates

4

a separate offense is a question of statutory interpretation; a court must discern the "legislative intent" based upon "[t]he language, structure, and legislative history" of the statute. Garrett, 471 U.S. at 779.

The language, structure, and legislative history of § 848(e)(1) establish that it is a separate offense, not merely a penalty enhancement. First, several other subsections of § 848 refer to § 848(e) as a separate offense. For example, § 848(i) requires a separate sentencing hearing if the government is seeking the death penalty and "the defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section." 21 U.S.C. § 848(i) (emphasis added). Section 848(n) lists the aggravating factors to be considered in punishing "an offense under subsection (e)." 21 U.S.C. § 848(n). See also 21 U.S.C. § 848(j) (describing the proof necessary for mitigating and aggravating factors "when a defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section"); 21 U.S.C. § 848(p) (allowing life imprisonment if the death penalty is not imposed and "[i]f a person is convicted for an offense under subsection (e) of this section"). The fact that the statute itself cross-references to § 848(e) as a distinct "offense" clearly expresses Congress' intent that § 848(e) be a separate crime.

Second, § 848(e) cannot be a penalty enhancement that only applies "in addition to the other penalties set forth in this section" because, in fact, § 848(e) does not apply solely to § 848 offenses. Section 848(e)(1)(A) also covers intentional killing while "engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title." 21 U.S.C. § 848(e)(1)(A). Section 848(e)(1)(B) applies even more broadly to the intentional killing of a law enforcement officer pursuant to "a felony violation of this subchapter or subchapter II of this chapter." 21 U.S.C. § 848(e)(1)(B). The express statutory language thus provides that the predicate offenses which trigger a § 848(e) violation include statutory provisions outside § 848, and directly contradicts any argument that § 848(e) is a penalty enhancement for a § 848(c) violation.

Third, in concluding that the congressional intent to create a separate offense was "indisputable" in Garrett , 471 U.S. at 784, the Supreme Court relied upon the fact that under the CCE statute "a sep-

5

arate penalty is set out, rather than a multiplier of the penalty established for some other offense." Id. at 781. The same is true here. The Garrett Court also relied on the fact that the statute before it was "aimed at a special problem. [Its] language is designed to reach the `top brass' in the drug rings, not the lieutenants and foot soldiers." Id. at 781. Section 848(e) is similarly aimed at special and serious crimes: killing a law-enforcement officer in connection with a drug offense, or killing in furtherance of a continuing criminal enterprise, large-scale drug distribution, or large-scale drug importation.

Finally, as the Fifth Circuit noted in United States v. Villarreal, 963 F.2d 725, 728 (5th Cir. 1992), the legislative history of § 848(e) "illustrates a Congressional intent to establish a separate offense:"

> Before 1988, § 848 embodied only a single statutory prohibition -- it punished offenders who engaged in a continuing criminal enterprise. After amendment by the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, 102 Stat. 4382, 4387-88, § 848(e) had added a death penalty provision, not for CCE offenses, but for an entirely new group of offenses -- intentional murders committed during certain specified felonies.

Id. See also, United States v. Snow, 48 F.3d 198, 200 (6th Cir. 1995).

To counter this substantial evidence of legislative intent, NJB offers two arguments. Neither is persuasive.

First, NJB points to several flaws in Congress' drafting of § 848(e) and asserts that because the Supreme Court noted that the statute at issue in Garrett was "carefully crafted," Garrett's analysis should not be followed here. NJB misunderstands Garrett. In Garrett the Supreme Court did not suggest that judges should base their conclusions as to legislative intent upon a critical analysis of Congressional drafting skills. Instead, Garrett established that courts must apply the tools of statutory construction to determine whether Congress meant to create a separate offense. Under that analysis, it is manifest that § 848(e) states a separate offense.

6

NJB's remaining contention is that such a holding would render the statutory language "[i]n addition to the other penalties set forth in this section" a nullity. This is so only under NJB's narrow construction of this language. Garrett itself offers insight into an alternative reason why Congress may have specified that § 848(e) applies "in addition to other penalties." Garrett dealt with the question of whether a CCE prosecution violated the Double Jeopardy Clause by punishing an accused first for the predicate offenses, and again for the offenses joined in the CCE prosecution. The Court found no Double Jeopardy violation. Garrett, 471 U.S. at 786-95. One of the questions at issue in Garrett was whether Congress meant to replace prosecutions of the underlying predicate offenses with the CCE prosecution. Id. at 784-86. Despite silence in the legislative history, the Supreme Court found that Congress did not mean "to substitute the CCE offense for the underlying predicate offenses;" instead, the Court concluded that a CCE prosecution and punishment occurs "in addition to prosecution for the predicate offenses." Id. at 785.

In light of this discussion in Garrett, it seems likely that, in using the similar language on which NJB now relies, Congress hoped to make absolutely clear that the punishment for a crime under § 848(e) was in addition to, and did not replace, any other punishments. See United States v. McCullah, 76 F.3d 1087, 1105 (10th Cir. 1996) ("Congress has clearly expressed its intention that the § 848(e) punishment be cumulative with any other applicable punishment, stating in the statute that the § 848(e) penalties are `[i]n addition to the other penalties set forth in this section.'"). As such, the language on which NJB's argument hinges is not inconsistent with our construction of the statute, but rather supports our holding.

In sum, because § 848(e) clearly sets forth a separate substantive violent offense, the Government's certification of this fact did not constitute error.

B.

NJB next claims that even if § 848(e) is a separate offense the Government's certification was deficient because it failed to state a "substantial Federal interest" in his prosecution as required under 18 U.S.C. § 5032 (first paragraph) (1994).

7

In United States v. Juvenile Male #1, 86 F.3d 1314, 1321 (4th Cir. 1996), the juvenile defendant was charged inter alia with violating the federal carjacking statute, 18 U.S.C. § 2119 (1994). We looked to "the legislative history of the carjacking statute," and the nature of the crime at issue to discern whether there was a substantial federal interest involved in Juvenile Male #1's case. Congress' decision to federalize the crime of carjacking, the harshness of the penalties prescribed, the "sense of urgency" in the debates and "[t]hat the circumstances of the carjacking and murder [at issue were] particularly egregious" led us to conclude that "a substantial federal interest [was] clearly present." Id. at 1321.

In this case, we need not independently search § 848(e)'s legislative history to determine whether a substantial federal interest warrants prosecution of NJB for violation of that statute because the legislative history of the delinquency statute -- 18 U.S.C. § 5032 -- itself expressly includes "large-scale drug trafficking" as an example of an offense that raises special federal concerns:

> [T]he committee intends that a determination that there is a "substantial Federal interest" be based on a finding that the nature of the offense or the circumstances of the case give rise to special Federal concerns. Examples of such cases could include an assault on, or assassination of, a Federal official, an aircraft hijacking, a kidnapping where State boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant and willful destruction of property belonging to the United States.

H.R. Rep. No. 98-1030, at 389 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3529 (emphasis added).

When an offense is listed among the examples in the legislative history of § 5032, a court need not independently assess the factors listed in Juvenile Male #1 to find a substantial Federal interest. Cf. Juvenile Male #1, 86 F.3d at 1318 (quoting H.R.Rep. No. 98-1030, at 389 (1984), reprinted in, 1984 U.S.C.A.A.N. 3182, 3529 and citing United States v. Male Juvenile, 844 F. Supp. 280, 283-84 (E.D. Va. 1994) (relying upon the above quoted legislative history to hold that

8

there is no "substantial Federal interest" in an "ordinary bank robbery")).

Accordingly, there was no deficiency in the Government's certification to the district court. Section 848(e) is a violent felony and there is a substantial Federal interest in prosecution of juveniles charged with violating it.

III.

NJB next argues that the district court erred in concluding that it had received complete and adequate juvenile records before conducting a transfer hearing, as required by 18 U.S.C.§ 5032 (tenth paragraph). Section 5032 provides in pertinent part:

> A juvenile shall not be transferred to adult prosecution . . . until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

18 U.S.C. § 5032 (tenth paragraph). When the Government moved to transfer NJB to adult jurisdiction, it filed a summary of his juvenile history and copies of court records of numerous juvenile petitions brought against him, and of three juvenile matters where the state juvenile court had transferred NJB to adult jurisdiction for criminal prosecution. However, the Government filed no certification stating that NJB's juvenile records were complete, and NJB asserts that its failure to do so constitutes a violation of § 5032.

The statute does require that "any prior juvenile court records" be "received by the court." There is no question, therefore, that the records before the district court must be complete. The question is whether the Government is responsible for obtaining a certification that the records are complete.

We note that there is no statutory basis for requiring a government certification that the records are complete. Section 5032 only requires

9

certification if there are <u>no</u> records, or the records are "unavailable." The statute's legislative history suggests that a good faith effort by a prosecutor should be sufficient:

> In many respects, determination of whether a young offender is to be treated as a juvenile or an adult and of the appropriate disposition of juveniles adjudicated delinquent depends on the nature of the juvenile's prior record. Too often, however, juvenile proceedings are undertaken without the benefit of such information. This new paragraph stresses that these records be obtained beforehand whenever possible. <u>The Committee intends, however, that this new provision's requirements are to be understood in the context of a standard of reasonableness.</u>

H.R.Rep. No. 98-1030, at 391 (1984), <u>reprinted in</u> 1984 U.S.C.C.A.N. 3182, 3531 (emphasis added).

Further, "most courts have read the records certification provision to require only good faith efforts by the government to provide the court with documentation of a juvenile's prior record." <u>United States v. Wong</u>, 40 F.3d 1347, 1369 (2d Cir. 1994), <u>cert. denied</u>, 116 S. Ct. 190 (1995). <u>See also United States v. Parker</u>, 956 F.2d 169, 170 (8th Cir. 1992).

We agree with the Second Circuit that a prosecutor should be held to a good faith standard. NJB does not claim that the Government held back records, or even that any of his records were missing. Thus, in this case, the Government's certification that NJB's juvenile records were complete was not necessary. This is not to say that a prosecutor can fail to gather all of the juvenile's records, or selectively collect records. We do not hold that the juvenile's records can be incomplete. Rather, we hold that the Government need not certify that these records are complete when there is not even an allegation of prosecutorial bad faith or missing records.

IV.

Finally, NJB asserts that the district court improperly construed the mandatory transfer provision of § 5032. Transfer to federal court is

10

mandatory for "a juvenile who is alleged to have committed [a felony offense that involves the use or threat of force against another] after his sixteenth birthday," if the juvenile "has previously been found guilty of an act which if committed by an adult would have been" a crime of violence. 18 U.S.C. § 5032 (paragraph four) (emphasis added). The district court found that under United States v. Hairston, 71 F.3d 115, 118 (4th Cir. 1995) NJB's previous state court adjudication for felony escape constituted a crime of violence. NJB posits two reasons why the court assertedly erred in so ruling.

A.

NJB first argues that there has been no showing of "guilt" as required by § 5032. Under Maryland law, juvenile proceedings are civil in nature. See In re Victor B., 646 A.2d 1012, 1014-15 (Md. 1994). The civil nature of Maryland's juvenile courts is statutorily established: "[a]n adjudication of a child pursuant to this subtitle is not a criminal conviction for any purpose and does not impose any of the civil disabilities ordinarily imposed by a criminal conviction." Md. Code Ann., Cts. & Jud. Proc. § 3-824(a)(1) (1995) (emphasis added). NJB relies on the italicized language to argue that he was never "found guilty" of a crime of violence as is required by § 5032 and is therefore not eligible for mandatory transfer.

The Ninth Circuit recently confronted a similar argument. In United States v. David H, 29 F.3d 489, 492 (9th Cir. 1994), it held that although an "[a]djudication of juvenile delinquency is not a conviction of a crime, but rather, a determination of a juvenile's status," an adjudication of delinquency can serve as a finding of guilt under § 5032. The court reasoned that because "Congress added the mandatory transfer provision to the Act for the very purpose of addressing the problem of repeat juvenile offenders," it would make no sense to exclude juvenile adjudications. Id. at 492-93. In contrast, NJB argues that by using the word "guilty," Congress must have meant to include a concept of mens rea. We find the reasoning of the Ninth Circuit more persuasive.

Maryland's specification that juvenile adjudications do not constitute criminal convictions is hardly unique. In fact, "in the early part of this century . . . jurisdictions throughout the country began creating

11

separate systems of courts that followed their own sets of principles for juvenile offenders. . . . In contrast to the adversarial nature of the adult system, in these systems, criminal charges were not brought against juvenile offenders." In re Victor B. , 646 A.2d at 1014. Numerous states still consider juvenile proceedings civil in nature. See e.g., Fla. Stat. Ann. § 39.053(4) (West Supp. 1997); Haw. Rev. Stat. § 571-1 (1993); Ky. Rev. Stat. Ann. § 635.040 (Michie 1990); Minn. Stat. Ann. § 260.211 (West 1992); Miss. Code Ann.§ 43-21-561(5) (1993); Mo. Rev. Stat. § 211.271(1) (1994); Neb. Rev. Stat. § 43-280 (1993); N.J. Stat. Ann. § 2A:4A-48 (West 1987); Okla. Stat. tit. 10, § 7307-1.7(A) (Supp. 1995); Vt. Stat. Ann. tit. 33, § 5535(a) (1991); W.Va. Code § 49-7-3 (1996); Wis. Stat. § 48-35(a)(1) (1992). The sheer number of states that do not hold juveniles criminally "guilty" for crimes renders NJB's construction of § 5032 unworkable. It seems very unlikely that Congress would create a special statute permitting the Government to treat juvenile offenders as adults in federal court and then except from the statute's reach a number of juvenile offenders solely because state law denominates their prior delinquency determinations as "adjudications" rather than"convictions." NJB's construction of the statute leads to an anomalous result: juvenile offenders accused of the same crime, and with identical previous criminal records, would be treated differently under federal law depending on whether the juvenile's previous crimes occurred in a state that "convicts" juvenile offenders, or one that "adjudicates" them delinquent. That could not have been Congress' intent.

Further, there is no indication that Congress sought to establish a large exception to § 5032 by requiring that prior offenses be accompanied by mens rea. To the contrary, the legislative history suggests that Congress was primarily concerned with "the high percentage of violent crime committed by juveniles who have records of criminal activity, and growing recognition that for some of these juveniles, the rehabilitation theory upon which the current juvenile justice system is based is not always adequate to protect the public interest." H.R.Rep. No. 98-1030, at 389 (1984), reprinted in 1984 U.S.C.A.A.N. 3182, 3529. In the House Report, Congress refers to "records of criminal activity" and never hints at a mens rea requirement. Moreover, the Report recognizes that § 5032 rejects the non-criminal approach taken by Maryland and other states for repeat juvenile offenders. It would indeed be ironic to permit this very non-

12

criminal approach to exempt all juvenile offenders in these states from the mandatory reach of § 5032.

For all of these reasons, we believe the district court was correct that a Maryland juvenile adjudication of escape suffices as a finding of "guilty" of this crime under § 5032.

B.

NJB next attempts to distinguish Hairston, in which we held that a felony escape from custody is a crime of violence because it "involves conduct that presents a serious potential risk of physical injury to another." United States v. Hairston, 71 F.3d 115, 117 (quoting 18 U.S.C. § 924(e)(2)(B)(ii) (1994)). NJB argues that Maryland has two distinct types of felony escape, one which includes assault, and one which does not, and because he was not adjudicated under the "violent" escape statute he has not committed a crime of violence.

NJB bases his theory that Maryland has two distinct types of felony escape on the fact that the State punishes an escape without an assault more leniently than an escape with an assault. See Md. Ann. Code art. 27, § 139(a)(2)(ii) (Supp. 1995). Maryland's escape statute does not help NJB avoid the clear holding of Hairston. It is doubtful that NJB is correct that Maryland actually provides for two distinct forms of escape; it appears that § 139(a)(2)(ii) only creates a lesser penalty for escape without assault, and does not create a separate offense.

Moreover, the important issue for the crime of violence analysis is the potential for violence, not whether violence actually occurred. Hairston held that escape constituted a crime of violence under a North Carolina statute which, like the portion of the Maryland statute NJB relies on, did not include assault or physical violence among its elements. Hairston, 71 F.3d at 117. Therefore, NJB's argument that escape is not a violent offense is squarely foreclosed by Hairston.*

_____

*NJB also argues that the district court erred in its alternative holding that NJB be transferred pursuant to § 5032's discretionary transfer provisions. 18 U.S.C. § 5032 (fourth and fifth paragraphs). Because we hold that the district court was correct that NJB be mandatorily transferred, we do not reach the court's alternative holding.

13

V.

For the forgoing reasons the order of the district court permitting the Government to prosecute NJB in federal court as an adult is hereby

<u>AFFIRMED</u>.

14