**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DAVID A., a juvenile,

      Defendant-Appellant.

No. 04-2284

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. 04-CR-1325 RB and 04-CR-2116 RB)**

---

James E. Bierly, Albuquerque, New Mexico, for Defendant-Appellant David A.

Terri J. Abernathy, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee United States of America.

---

Before **EBEL, HENRY** and **McCONNELL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    The Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. §§ 5031-5042, requires that a juvenile who has been charged with a crime occurring after his sixteenth birthday and who "has previously been found guilty of an act which if

committed by an adult" would fall within a specific category of offenses, *must* be transferred to the district court to be tried as an adult. 18 U.S.C. § 5032. In this appeal, we consider the proper procedures applicable to such a mandatory transfer under § 5032. We conclude that 1) the Government's filing a transfer motion tolls the juvenile's thirty-day speedy trial rights provided under 18 U.S.C. § 5036; 2) the Government's good faith search for the juvenile's records in this case satisfied § 5032's requirement that "[a] juvenile shall not be transferred to adult prosecution . . . until any prior juvenile records of such juvenile have been received by the court;" 3) a juvenile's prior juvenile delinquency adjudication meets § 5032's requirement that the juvenile have been previously "found guilty of an act which if committed by an adult would have been one of the offenses set forth" by the statute; and 4) the Government met its burden in this case of establishing by a preponderance of the evidence that the juvenile had a prior juvenile delinquency adjudication by submitting certified documents stemming from that delinquency adjudication, where the juvenile failed to assert any evidence contradicting those certified documents.

## I.    Procedural background

On July 12, 2004, the United States charged then sixteen-year-old David A. by criminal information with "knowingly violat[ing] the Federal Juvenile Delinquency Act [by] unlawfully, knowingly and intentionally distribut[ing] 50

2

grams or more of methamphetamine," contrary to 18 U.S.C. § 2 and 21 U.S.C.

§ 841(a)(1) and (b)(1)(A).[1]  The Government also certified its intent to proceed

against David A. in federal court.[2]  Federal authorities took David A. into custody

---

[1]      21 U.S.C. § 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  And 21 U.S.C. § 841(b)(1)(A)(viii) provides, in pertinent part, that "[i]n the case of a violation of subsection (a) of this section involving . . . 50 grams or more of methamphetamine . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life."

Further, 18 U.S.C. § 2 provides

(a) Whoever commits an offense against the United States or aids, abets, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[2]      Section 5032 provides that

[a] juvenile alleged to have committed an act of juvenile delinquency, other than a violation of law committed within the special maritime and territorial jurisdiction of the United States for which the maximum authorized term of imprisonment does not exceed six months, shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or an offense described in . . . 21 U.S.C. § 841 . . . , and that there is a substantial Federal

(continued...)

the next day, July 13, 2004.

On July 26, 2004, the Government filed a motion to proceed against David A. as an adult. In that motion, the Government asserted that the FJDA, see 18 U.S.C. § 5032, mandated transferring David A. to the United States district court to be tried as an adult because he was charged with a drug trafficking offense allegedly committed after he had turned sixteen years of age, and New Mexico had previously adjudicated David A. a juvenile delinquent based upon an earlier residential burglary charge. The district court conducted a hearing on that transfer motion on August 25, 2004, but postponed that hearing after discovering that David A.'s parents were not given notice of the hearing. The district court continued the hearing until October 18, 2004. At the conclusion of the October 18 hearing, the district court granted the Government's motion to transfer David A. to the district court to be tried as an adult. David A. timely appeals from that transfer.

## II.    Appellate jurisdiction.

It is clear that this court has appellate jurisdiction to consider this appeal because "an order transferring a juvenile to be tried as an adult is immediately appealable under the collateral order doctrine. . . . Cohen v. Beneficial Indus.

---

[2](...continued)
interest in the case or the offense to warrant the exercise of Federal jurisdiction.

4

Loan Corp., 337 U.S. 541 . . . (1949)." United States v. Angelo D., 88 F.3d 856, 858 (10th Cir. 1996).

> The legal and practical benefits of being tried as a juvenile–which include pretrial detention in a foster home or community-based facility near the juvenile's home instead of an adult prison, see 18 U.S.C. § 5035, and the sealing of the records and the withholding of the juvenile's name and picture from the media, see 18 U.S.C. § 5038–would be destroyed if the defendant were forced to wait until after trial and a final judgment in order to appeal. Our belief that an appeal from a final judgment would do little to resurrect the special protections afforded juvenile defendants leads us to join our sister circuits in concluding that an order transferring a juvenile to adult status is immediately appealable under the collateral order doctrine.

Id. (citations omitted).

In this case, however, one of the bases on which David A. challenges his transfer is that the Government violated David A.'s speedy trial rights guaranteed under 18 U.S.C. § 5036. The Ninth Circuit has held that, while the district court's transfer decision is itself immediately appealable, an appeal challenging the district court's refusal to *dismiss* a juvenile claim for a speedy trial violation under 18 U.S.C. § 5036 is not. See United States v. Brandon P., 387 F.3d 969, 972-74 (9th Cir. 2004), cert. denied, 125 S. Ct. 2936 (2005).

This case, however, is distinguishable from Brandon P. because David A. never moved to have the charge against him dismissed based upon the alleged violation of his § 5306 speedy trial rights. Rather, he relies upon the district court's delay in deciding the transfer motion as one ground precluding his transfer

5

to be tried as an adult.  And, as explained above, the district court's decision to transfer David A. to district court to be tried as an adult is immediately appealable.

Moreover, we agree with the Sixth Circuit that a circuit court does have jurisdiction to consider an interlocutory appeal involving a juvenile's speedy trial rights under § 5036.  See United States v. A.R., 203 F.3d 955, 962-63 & 963 n. 6 (6th Cir. 2000) (limiting its holding "to speedy trial claims filed after the district court has issued a transfer order").

> A speedy trial claim following a transfer order in the juvenile context implicates the very concern which allows us to hear appeals on the merits of transfer orders under the collateral order doctrine–namely, if [juvenile] defendants . . . have to wait until after trial and a final judgment to appeal the claim, the adult trial would have already sacrificed the "legal and practical benefits of being tried as a juvenile."

Id. at 963 (quoting Angelo D., 88 F.3d at 858 (further quotation omitted)); see also United States v. Doe, 49 F.3d 859, 864-65 (2d Cir. 1995) (addressing juvenile's speedy trial rights in interlocutory appeal from decision to transfer juvenile to be tried as adult).  For these reasons, we are satisfied we have appellate jurisdiction to consider David A.'s interlocutory appeal.

## III.  Issues

David A. asserts four reasons why the district court erred in transferring him to district court to be tried as an adult: 1) the district court delayed in

granting the Government's motion to transfer David A. to be tried as an adult, violating his speedy trial rights provided under 18 U.S.C. § 5036; 2) the Government failed to comply with 18 U.S.C. § 5032's requirement that the district court, before transferring a juvenile, have all the juvenile's records before it; 3) mandatory transfer under § 5032 was not appropriate in this case because David A. was not "found guilty" of any offense in the prior state-court proceeding, but was instead only adjudicated a delinquent; and 4) the Government failed to meet its burden of proving that the David A. charged in these federal proceedings is the same juvenile that was adjudged delinquent in the earlier New Mexico proceeding.  For the following reasons, we reject David A.'s arguments and AFFIRM the district court's decision to transfer David A. to the district court to be tried as an adult.

### A.     18 U.S.C. § 5036's speedy trial rights

Title 18, U.S.C. § 5036 requires that

> [i]f an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed on motion of the alleged delinquent or at the direction of the court, unless the Attorney General shows that additional delay was caused by the juvenile and his counsel, or consented to by the juvenile and his counsel, or would be in the interest of justice in the particular case. Delays attributable solely to court calendar congestion may not be considered in the interest of justice.  Except in extraordinary circumstances, an information dismissed under this section may not be reinstituted.

7

Section 5036's speedy trial period begins to run from the date the Government took David A. into custody, on July 13, 2004. See United States v. Female Juvenile, A.F.S., 377 F.3d 27, 34 (1st Cir. 2004) (noting § 5036's "thirty-day time limitation . . . begins to run when the juvenile is taken into federal custody pending trial on federal delinquency charges"); United States v. Doe, 366 F.3d 1069, 1070, 1074 (9th Cir. 2004) (same) (reh'g en banc); see also United States v. Doe, 642 F.2d 1206, 1208 (10th Cir. 1981). Thirty days from that date would have been August 12, 2004. The Government, however, filed its transfer motion on July 26, 2004, thirteen days after taking David A. into custody. The district court held the first transfer hearing on August 24, but continued that hearing after discovering that David A's parents had never received notice of the hearing. The district court conducted a second hearing on October 18, 2004, verbally granted the transfer motion that day, and then filed a written order the next day, on October 19, 2004, approximately ninety-nine days after David A. was taken into custody.

On appeal, David A. argues both that the district court violated 18 U.S.C. § 5036 by not either trying him or transferring him within thirty days of when his federal detention began; and that the eighty-four-day delay—July 26 to October 19—in resolving the transfer motion was unreasonable. The district court held both that the Government's filing its motion to transfer David A. to district court

8

to be tried as an adult tolled § 5036's thirty-day time limit, and that the delay in resolving that transfer motion was not unreasonable. We agree with the district court's conclusions on both points.

### 1. Government's motion to transfer tolled § 5036's thirty-day time period

This court will "consider de novo the legal question of whether [a juvenile's] detention . . . exceeded the thirty-day period permitted under the FJDA's speedy trial provision." Female Juvenile, A.F.S., 377 F.3d at 33; see also United States v. Sealed Juvenile 1, 192 F.3d 488, 490 (5th Cir. 1999); United States v. Eric B., 86 F.3d 869, 872 (9th Cir. 1996); United States v. Juvenile Male, 74 F.3d 526, 528 (4th Cir. 1996); cf. Doe, 49 F.3d at 865 (reviewing for an abuse of discretion whether delay beyond § 5036's thirty-day limit was excusable in the "interest of justice"). We will review any underlying factual findings only for clear error. See Sealed Juvenile 1, 192 F.3d at 490. In addition, we review the district court's interpretation of § 5036 de novo. See Angelo D., 88 F.3d at 859.

We agree with the district court that the Government's filing its transfer motion tolled § 5036's thirty-day speedy trial period. Every circuit that has addressed the issue has reached this same conclusion. See A.R., 203 F.3d at 964 (6th Cir. 2000); Sealed Juvenile 1, 192 F.3d at 491-92 (5th Cir. 1999); United States v. Wong, 40 F.3d 1347, 1371 (2d Cir. 1994); United States v. Romulus,

949 F.2d 713, 716 (4th Cir. 1991). Such tolling falls under § 5036's language permitting delay that would be "in the interests of justice." A.R., 203 F.3d at 964; Romulus, 949 F.2d at 716; see also Sealed Juvenile 1, 192 F.3d at 491-92; Wong, 40 F.3d at 1371. Further, tolling § 5036's thirty-day time frame for a transfer motion "is consistent with . . . circuits' willingness to grant such [interest-of-justice] exceptions [to the speedy trial requirement] liberally." A.R., 203 F.3d at 964. We agree with this reasoning and, therefore, hold that the Government's filing a transfer motion will toll § 5036's thirty-day speedy trial period. Once the district court granted the transfer motion in this case, § 5036's time limits were no longer applicable because the juvenile was no longer "an alleged delinquent . . . in detention pending trial." See Romulus, 949 F.2d at 716 (alteration in original).

Moreover, there is no suggestion in the record that the Government in this case acted in bad faith or for the purpose of delay by waiting thirteen days after it took David A. into custody before filing its transfer motion. See Sealed Juvenile 1, 192 F.3d at 491-92 (noting the "fact that the government waited 23 days after the defendant's arrest and detention to file its motion to transfer does give us some pause," but further noting that "defendant did not claim . . . that the government was [acting] in bad faith or filed the transfer motion as a mere dilatory tactic"and the record did "not reveal such"); Wong, 40 F.3d at 1370-71

10

(holding there was no speedy trial problem where the government filed a transfer motion on the twenty-ninth day of § 5036's thirty-day speedy trial period; the district court noted there was no suggestion that the government did not make the transfer motion in good faith and found that "the government had proceeded in a reasonably expeditious manner and had presented a serious motion to transfer") (quotation omitted).

### 2. Delay in resolving the transfer motion

Once the Government has tolled the § 5036 thirty-day time frame by filing its transfer motion, "there is no requirement that a court must make its transfer determination within thirty days of the motion's filing." A.R., 203 F.3d at 964; cf. Wong, 40 F.3d at 1371 (in calculating time under § 5036, court excluded the forty-three days that elapsed between Government's filing its transfer motion and the district court's resolving that motion "as in the interest of justice"). Nonetheless, "[t]he administration of juvenile justice in an expeditious manner is a paramount interest under the speedy trial provision." Sealed Juvenile 1, 192 F.3d at 491-92. David A. argues that the district court's eighty-four-day delay in resolving the Government's transfer motion in this case was unreasonable. We disagree.

11

The district court conducted an initial hearing on the transfer motion on August 25, 2004.[3] The district court had to continue that hearing, however, because David A.'s parents had not received notice of the hearing as 18 U.S.C. § 5032 requires.[4] At that time, David A.'s father was a fugitive thought to be in Mexico and his mother had been a fugitive, having been arrested less than a week before David A.'s initial transfer hearing. Further, there is no indication in the record that there was a guardian or custodian other than his parents who would have been responsible for David A. During the August 25 hearing, therefore, the district court continued the transfer hearing to a later date and directed the Government to take reasonable efforts to notify David A.'s parents of that hearing. The Government did give David A's mother notice of the next hearing, and also tried to notify his father. In addition, the Government sent notice of the hearing to David A.'s brother, uncle and aunt. The district court conducted the second transfer hearing on October 18, 2004. At that hearing, the district court verbally granted the transfer motion and then entered a written order the next day.

---

[3] David A. does not expressly challenge the one-month delay in scheduling the first transfer hearing.

[4] Section 5032 provides that "[r]easonable notice of the transfer hearing shall be given to the juvenile, his parents, guardian, or custodian and to his counsel." 18 U.S.C. § 5032. The Government argues that § 5032 does not specify whether or not it is the Government who must give this notice. We need not decide that issue in this case, however, because even assuming it was the Government's duty to give this notice, the Government reasonably attempted to do so under the facts of this case.

12

In light of the facts of this case, we cannot say that the eighty-four days it took the district court to resolve the Government's transfer motion was unreasonable, although we acknowledge it is probably at the outer limits of an acceptable time frame.[5] Cf. Sealed Juvenile 1, 192 F.3d at 490-91 (noting district court resolved transfer motion in nineteen days); Wong, 40 F.3d at 1371 (noting district court took forty-three days to resolve transfer motion); Romulus, 949 F.2d at 716 (noting district court took nineteen days to resolve transfer motion); cf. A.R., 203 F.3d at 957, 962 (noting district court held transfer hearing fifty-five days after juvenile was first detained in federal custody).

### 3.    Conclusion.

For these reasons, we conclude that any delay in the district court's resolving the Government's motion to transfer David A. to district court to be

---

[5]    The Government was able to notify David A.'s mother, brother, aunt and uncle by September 10, 2004.  The trial judge, however, was unavailable to conduct a hearing during the week of September 20, 2004.  And the prosecutor was apparently unavailable for a transfer hearing from September 27 through October 1, 2004.  The district court further acknowledged that the court had several trials scheduled beginning the last week of September 2004.  However, while § 5036 provides that "[d]elays attributable solely to court calendar congestion may not be considered in the interests of justice" sufficient to excuse counting the time against § 5036's thirty-day time period, that time period had already been tolled by the Government's filing its transfer motion.  And we cannot say that these reasons, which added to the delay in the district court scheduling the second transfer hearing, were unreasonable under the circumstances of this case.

tried as an adult did not preclude the district court from granting that transfer motion.

### B. Search for juvenile's records

David A. next argues that the Government failed to conduct an adequate search for his juvenile records. Title 18, U.S.C. § 5032 provides that

> [a] juvenile shall not be transferred to adult prosecution . . . until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

We interpret § 5032's requirements de novo, see Angelo D., 88 F.3d at 859, and conclude that the Government complied with § 5032's records provision.

In this case, the Government submitted to the district court David A.'s juvenile records from the Artesia Children's Court in Eddy County, New Mexico, indicating, among other things, that David A. had been adjudicated delinquent in that court on May 6, 2002, based upon a charge of residential burglary. In addition, the federal district court clerk in New Mexico certified that that court did not have any records pertaining to David. A. The prosecutor further asserted that the Government, in gathering David A.'s juvenile records, had also reviewed the National Crime Information Center ("NCIC") report for David A., which did not indicate that he had been arrested for any offenses other than those already reported to the district court. In addition, the prosecutor asserted that the

14

Government had checked the counties where David A. lived and where the alleged federal criminal charge occurred. David A. does not contend that the Government possesses records that it has not submitted to the district court; nor is there any suggestion that there are other records that the Government has failed to locate.

David A. nevertheless argued to the district court that there was still nothing in the record "indicating that this is his juvenile record in its entirety."[6] He thus claims that the government failed in its obligation to find and supply copies of all documents that are part of his juvenile record. We disagree.

We begin with the statutory language, which requires that, as a prerequisite to transferring a juvenile to adult prosecution, "any prior juvenile court records of such juvenile have been received by the court." 18 U.S.C. § 5032. The statute does not explicitly impose any obligations on the prosecution to search for records, but requires only that "any" such records be "received by" the court. This Court and other courts have nonetheless interpreted the statute as containing an implied obligation on the prosecution to undertake a good faith effort to locate and provide all relevant records. As this duty is merely implied from the statutory provision, however, it extends no further than is reasonably necessary to achieve

_____

[6] David A. also argued that § 5032 actually required the district court, rather than the Government, to formally request David A.'s records from other courts. He does not, however, reassert that argument on appeal.

15

the purposes of the statute. Where, as here, the prosecution has undertaken a good faith search for the juvenile's records, it would be unreasonable to hold that its obligations were not satisfied unless it checked every juvenile court record in the country, including those with no connection to David A.

In Brian N., 900 F.2d 218, this court addressed this same statutory language in a slightly different context in an earlier version of § 5032. Unlike the current version of § 5032, which provides that the district court cannot transfer a juvenile to be tried as an adult until the court receives his juvenile records, the version of § 5032 at issue in Brian N. required that

> "*[a]ny proceedings* against a juvenile under this chapter or as an adult *shall not be commenced until any prior juvenile court records* of such juvenile *have been received by the court*, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable."

900 F.3d at 220-21 (quoting 18 U.S.C. § 5032 (1988) (subsequently revised in 1994)). In Brian N., the Government asserted, among other arguments, that this language was "ambiguous because there is no definition of juvenile court records." Id. at 222. This court rejected that argument, holding that this

> language in . . . section 5032 unambiguously states that *any* prior juvenile court records are to be filed. This includes municipal, county, state, federal, as well as tribal court records. The government complains that it would have to search each New Mexico judicial district as well as other state jurisdictions before it could file under this statute. [But] [t]his argument is an attack on Congress's decision to place these burdens on the government in juvenile cases.

16

Brian N., 900 F.2d at 222. In Brian N., however, the Government had failed to submit to the district court juvenile records that "the government was aware of" and whose contents "probably formed the basis for the [Government's] decision to seek transfer" of the juvenile to district court to be tried as an adult. Id. Brian N., nevertheless, left open the possibility that the Government's good faith attempt to comply with this records requirement might suffice to meet § 5032's records requirement – "we are not required to resolve a conflict where a good faith effort fails to produce a juvenile record which may in fact exist somewhere." Id.

Other courts have recognized that § 5032 requires only that the Government expend a good faith effort to locate all the juvenile's records.

> While the language of th[is] record certification provision of § 5032 is amenable to a strict interpretation, most courts have read the records certification provision to require only good faith efforts by the government to provide the court with documentation of a juvenile's prior record (or to the effect that no such record exists or is available).

Wong, 40 F.3d at 1369 (2d Cir. 1994) (citations omitted); see also United States v. NJB, 104 F.3d 630, 636 (4th Cir. 1997). Further, the legislative history underlying this records requirement "suggests that a good faith effort by a prosecutor should be sufficient." NJB, 104 F.3d at 636.

> "In many respects, determination of whether a young offender is to be treated as a juvenile or an adult and of the appropriate disposition of juveniles adjudicated delinquent depends on the nature of the

17

juvenile's prior record. Too often, however, juvenile proceedings are undertaken without benefit of such information. This new paragraph stresses that these records be obtained beforehand whenever possible. The Committee intends, however, that this new provision's requirements are to be understood in the context of a standard of reasonableness."

Id. (quoting H.R. Rep. No. 98-1030, at 391 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3531) (emphasis omitted).

Further, we note, as did the Seventh Circuit, see Jarrett, 133 F.3d at 537-38, that in the cases where a federal appellate court has invalidated federal juvenile proceedings because the Government failed to comply with § 5032's records requirement, the Government's conduct could not be classified as a good faith attempt to locate the juvenile's records. Those cases include situations where the Government failed to submit records that actually existed or at least failed to present them in a timely manner, or failed to comply at all with the statute. See United States v. Doe, 13 F.3d 302, 304 (9th Cir. 1993) (vacating delinquency adjudication where the Government submitted records two months after the criminal information was filed, when the previous version of § 5032 required that the records be filed before juvenile proceedings were commenced) overruled on other grounds by Doe, 366 F.3d at 1075-76; United States v. M.I.M., 932 F.2d 1016, 1020 (1st Cir. 1991) (overturning juvenile delinquency adjudication where the Government failed to submit the juvenile's records until the morning of the delinquency proceeding); United States v. Juvenile Male, 923 F.2d 614, 620 (8th

18

Cir. 1991) (noting that the Government had failed to submit either juvenile records or a court clerk's certificate that there were no such records).[7] In addition, the First Circuit, like this court's decision in Brian N., 900 F.2d at 22, left open the possibility that a good faith attempt to comply with § 5032's records requirement will suffice. See M.I.M., 932 F.2d at 1019 (holding, under the prior version of § 5032, that "until the court receives at least a good faith proffer of the juvenile records or a certificate as to their absence or unavailability, no proceedings may begin against the juvenile"); see also id. at 1020 n. 2 (noting that "[t]his case does not present a situation where some, but not all, of the juvenile records were produced in a timely manner, or where a timely certificate of the absence or unavailability, regular on its face, was filed, but later proved erroneous;" further noting that the court does "not reach the questions of whether, or under what circumstances, such errors might require the dismissal or vacation of an adjudication").

In this case, the Government has complied in good faith with its duty to locate all of David A.'s records. The Government took reasonable efforts to locate all possible records pertaining to David A. And, unlike in Brian N., there

---

[7]     We note that these cases all involved the prior version of § 5032, which required that the Government submit the juvenile's records to the district court before the federal juvenile proceedings could be *commenced*. See Doe, 13 F.3d at 304; M.I.M., 932 F.2d at 1019; Doe, 923 F.2d at 620.

19

is no suggestion that the Government possesses records that it has not submitted to the district court; nor is there any suggestion that there are other records that the Government has failed to locate. See Jarrett, 133 F.3d at 537 (rejecting a challenge to the Government's compliance with § 5032's records requirement, in part, because the defendant failed to point to any specific records that Government had failed to submit). The Government's good faith efforts in this case were sufficient to satisfy § 5032. See Jarrett, 133 F.3d at 537-38 (holding the Government complied with § 5032's records requirements where it properly submitted records of the defendant's lone previous conviction and there was no indication that any other records existed).

## C.  Meaning of "found guilty"

In this case, the Government sought to transfer David A. to the district court to be tried as an adult based upon 18 U.S.C. § 5032's mandatory transfer rule. In pertinent part, § 5032 provides that

> a juvenile who is alleged to have committed an act [enumerated in § 5032] after his sixteenth birthday . . . and who has previously been *found guilty* of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed, *shall* be transferred to the appropriate district court of the United States for criminal prosecution.

18 U.S.C. § 5032 (emphasis added.); see also Female Juvenile, A.F.S., 377 F.3d at 32. In this case, the Government based its motion for a mandatory transfer on

20

David A.'s 2002 New Mexico juvenile delinquency adjudication resulting from a residential burglary charge. David A. argues, however, that because he was only adjudicated a juvenile delinquent, he was never "found guilty" of the residential burglary charge sufficient to invoke § 5032's mandatory transfer provision. The district court, however, held that the New Mexico juvenile delinquency adjudication was sufficient to satisfy § 5032's requirement that David A. have been previously "found guilty" of a specified offense.[8] Reviewing the district court's interpretation of § 5032 de novo, see Angelo D., 88 F.3d at 859, we agree.

All of the circuits that have addressed this question have held that a prior juvenile delinquency adjudication satisfies § 5032's requirement that the juvenile have been "found guilty" of a prior offense. See NJB, 104 F.3d at 636-37 (4th Cir. 1997); United States v. Juvenile Male No. 1, 47 F.3d 68, 69 (2d Cir. 1995) (in dicta); United States v. David H., 29 F.3d 489, 492-93 (9th Cir. 1994); see also United States v. Juvenile, 228 F.3d 987, 990 (9th Cir. 2000) (holding that basing mandatory transfer on prior juvenile delinquency adjudication did not deprive juvenile of due process or equal protection). The reasoning of these courts is persuasive.

---

[8]     David A. does not dispute that the residential burglary charge underlying his juvenile delinquency adjudication falls under the category of offenses that satisfies § 5032's mandatory-transfer provision.

21

The language of the statute itself points to this conclusion. See David H., 29 F.3d at 492. Section 5032's "phrase 'has previously been found guilty of an act' is followed by the phrase 'which if committed by an adult would have been one of the offenses set forth in this subsection.' . . . The phrase 'which if committed by an adult' . . . clearly indicates Congress intended 'found guilty' to apply to previous juvenile delinquency adjudications."[9] David H., 29 F.3d at 492.

In addition, the purpose underlying § 5032's mandatory-transfer rule supports concluding that § 5032's phrase "found guilty" includes juvenile delinquency adjudications. "[B]ecause 'Congress added the mandatory transfer provision to the Act for the very purpose of addressing the problem of repeat juvenile offenders,' it would make no sense to exclude juvenile adjudications." NJB, 104 F.3d at 637 (quoting David H., 29 F.3d at 492-93). Moreover, "[n]umerous states still consider juvenile proceedings civil in nature." Id.

> The sheer number of states that do not hold juveniles criminally "guilty" for crimes renders [David A.'s proffered] construction of § 5032 [that it applies only to criminal convictions and not to juvenile delinquency adjudications] unworkable. It seems very

---

[9] The Ninth Circuit further noted that Congress had used similar language in another section of the FJDA, 18 U.S.C. § 5038, which provides that "'[w]henever a juvenile is found guilty of committing an act *which if committed by an adult* would be a felony that is a crime of violence . . . , such juvenile shall be fingerprinted and photographed.'" David H., 29 F.3d at 492 (quoting 18 U.S.C. § 5038(d)). The Ninth Circuit noted that this language in § 5038 reinforced that court's conclusion that "found guilty" in § 5032 included juvenile delinquency adjudications. See David H., 29 F.3d at 492.

22

unlikely that Congress would create a special statute permitting the Government to treat juvenile offenders as adults in federal court and then except from the statute's reach a number of juvenile offenders solely because state law denominates their prior delinquency determinations as "adjudications" rather than "convictions." [The proffered] construction of the statute leads to an anomalous result: juvenile offenders accused of the same crime, and with identical previous criminal records, would be treated differently under federal law depending on whether the juvenile's previous crimes occurred in a state that "convicts" juvenile offenders, or one that "adjudicates" them delinquent. That could not have been Congress' intent.

Id.

For these reasons, we agree with all of the circuits that have addressed this issue and hold that David A.'s previous juvenile delinquency adjudication satisfied § 5032's requirement that he "has previously been found guilty" of one of the enumerated offenses that would support his mandatory transfer to district court to be tried as an adult.

### D. Sufficiency of evidence to establish prior juvenile delinquency adjudication.

Lastly, David A. argues that the Government failed to prove that he was the same David A. who had been adjudicated a juvenile delinquent in the New Mexico proceeding.[10] "Under § 5032, juvenile adjudication is presumed

---

[10] David A. does not challenge any of the district court's other determinations: that the current federal drug trafficking charge filed against him is based upon conduct occurring after he turned sixteen and is an offense enumerated in § 5032; or that his prior juvenile delinquency adjudication for residential burglary falls within the category of offenses warranting a mandatory

(continued...)

23

appropriate, and the government bears the burden of establishing that a transfer to adult status is warranted." United States v. Leon D.M., 132 F.3d 583, 589 (10th Cir. 1997) (addressing discretionary transfer); see also Female Juvenile, A.F.S., 377 F.3d at 32-33 (applying same presumption to motion for mandatory transfer). We will review the district court's factual finding that this David A. is the same individual adjudicated delinquent in the Eddy County, New Mexico proceedings for clear error. See Sealed Juvenile 1, 192 F.3d at 490.

The Government first argues that David A.'s defense counsel conceded, during the second transfer hearing, that his client was the same David A. who was involved in the delinquency proceeding in Eddy County, New Mexico. During that hearing, defense counsel was arguing that the New Mexico residential burglary charge was insufficient to invoke the mandatory transfer rule (an argument that David A. does not now assert on appeal). In asserting this argument, defense counsel noted that § 5032 required that the prior offense be one "that by its very nature involves a substantial risk that physical force against a person of another may be used in committing an offense." Defense counsel then argued

> under State law, there is no requirement that there be the threatened
> use of force or – and there's no requirement that a person has to be

---

[10](...continued)
transfer under § 5032.

home or that an owner has to be in the business; that's simply not one of the requirements of the offense of burglary. And in speaking with David about the manner in which this occurred, the act for which he had been adjudicated delinquent previously, there was no contact with any person in the structure for which he was accused of entering and adjudicated delinquent, and there was no threat of force. The facts underlying the adjudication simply didn't support that this was or could have been a crime of violence or an act that by its very nature involves a substantial risk of physical force against a person of another may be used in committing the offense.

We disagree that by this argument, defense counsel admitted that David A. was the same person who was adjudicated delinquent in the juvenile proceeding in Eddy County, New Mexico. Later in the transfer hearing, defense counsel went to significant lengths not to concede that point. When the district court inquired whether defense counsel "dispute[d] that your client is the same David A. that was adjudicated and adjudged a delinquent child in the Fifth Judicial District Court, Eddy County matter, concluded in May of 2002," defense counsel asserted that he had "no evidence to present one way or the other." The court did not understand "what that mean[t]." Defense counsel again responded that

all I'm saying is, my concern is that if I concede something like that, and it wasn't sufficiently proven for an appellate court, that it would be held against him, and I don't want to concede that on his part. I'm just saying I don't have evidence one way or the other.

The Government also asserts that its evidence was, in any event, sufficient to meet its burden of proving that David A. was the same individual who was adjudicated a delinquent in the Eddy County, New Mexico proceeding. In

25

addressing this question, we must first determine what that burden is. Other courts have held that, in a juvenile transfer proceeding, the Government bears the burden of proving that the juvenile should be tried as an adult only by a preponderance of the evidence. Cf. United States v. Robinson, 404 F.3d 850, 858 (4th Cir.) (addressing discretionary transfer[11]), cert. denied, 126 S. Ct. 469 (2005); see also Doe, 49 F.3d at 868 (2d Cir. 1995) (applying preponderance-of-the-evidence standard and rejecting, in discretionary transfer proceeding, argument that burden of proof should instead be by clear and convincing evidence); United States v. A.R., 38 F.3d 699, 703 (3d Cir. 1994) (discretionary transfer proceeding); United States v. Juvenile Male No. 1, 86 F.3d 1314, 1323 (4th Cir. 1996) (discretionary transfer proceeding); United States v. T.F.F., 55 F.3d 1118, 1122 (6th Cir. 1995) (applying preponderance-of-the-

---

[11]    When a district court considers a discretionary, as opposed to a mandatory, transfer, the court must decide whether or not it would be in the "interest of justice" to try the juvenile as an adult, after considering six factors:

> (1) the age and social background of the juvenile; (2) the nature of the alleged offense; (3) the nature and extent of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems.

United States v. McQuade, 403 F.3d 717, 719 (10th Cir. 2005) (citing 18 U.S.C. § 5032). This court reviews a district court's discretionary transfer decision only for an abuse of discretion. See id.

evidence standard and rejecting, in discretionary transfer proceeding, argument that burden of proof should instead be by clear and convincing evidence); United States v. Parker, 956 F.2d 169, 171 (8th Cir. 1992) (applying preponderance-of-the-evidence standard in discretionary transfer proceeding; rejecting argument that government should "prove its case for transfer beyond a reasonable doubt"); Brandon P., 387 F.3d at 976-77 (9th Cir. 2004) (citing cases; discretionary transfer case); United States v. I.D.P., 102 F.3d 507, 513 (11th Cir. 1996) (discretionary transfer proceeding). We join these courts and adopt a preponderance-of-the-evidence standard. We choose to apply this burden of proof, rather than a higher one, because

> a transfer hearing under the JDA is not a criminal proceeding designed to explore the defendant's guilt or innocence. That question is to be determined by means of the eventual trial, regardless of whether the court determines that the defendant should be tried as an adult or as a juvenile. Nor does the hearing under the Act affect whether the defendant will be confined, either prior to or after trial.

Doe, 49 F.3d at 868. The transfer determination, then, "neither influences nor affects any issue regarding the defendants' innocence or guilt. . . . [T]he court's findings with respect to transfer is the beginning–not the end–of the adjudicatory process." I.D.P., 102 F.3d at 514.

Applying a preponderance-of-the-evidence quantum of proof, we conclude that the Government met its burden in this case of proving that the David A.

27

adjudicated a delinquent in Eddy County, New Mexico on a residential burglary charge is the same David A. now charged in this federal proceeding. During the transfer hearings, the Government submitted as evidence certified copies of 1) a petition for a juvenile delinquency adjudication filed in Artesia's Children's Court, Eddy County, New Mexico in 2001, alleging the juvenile charged committed a residential burglary, among other crimes; and 2) a "Judgment and Disposition" from that same court dated May 6, 2002, "adjudicating the child . . . a juvenile delinquent." These two documents concerned a David A.[12]

In an analogous situation in an adult criminal proceeding, this court held that the Government meets its burden of proving, by a preponderance of the evidence, that a defendant had prior convictions by submitting certified copies of those convictions. See Cooper, 375 F.3d at 1052-53. In Cooper, the Government bore the burden of proving that the defendant had prior convictions for sentencing purposes. See id. at 1052-53. "Whenever a prior conviction is relevant to sentencing, the government must establish the fact of that conviction by a preponderance of the evidence." Id. at 1052. In Cooper, "[t]he government produced certified documents as evidence of Mr. Cooper's five prior serious

---

[12] The Government further asserts that the juvenile in both these federal proceedings and in the Eddy County proceedings has the same last name and birth date, and has a mother with the same first and last name. None of the parties have included these exhibits in the appellate record, but the defendant does not challenge that assertion on appeal.

felony convictions.  Although Mr. Cooper disputed that the government had shown he was the Todd Cooper convicted in those cases, he offered no evidence to contradict the certified copies offered by the government." Id. at 1053.  This court held that

> [i]f the government introduces certified copies of conviction . . . , the government met its burden of proving by a preponderance that the defendant committed the prior felonies . . . .  After the government introduces the certified copies of conviction, the district court must take the additional step of conducting a hearing on the . . . issue only if the defendant tenders any other evidence that the prior convictions were not his . . . .

Id. (quotation omitted).  In Cooper, then, the district court properly imposed a sentenced based upon the defendant's prior convictions, because the defendant failed to assert his own testimony or other evidence indicating that the prior convictions were not his.[13]  See id.; see also United States v. Oberle, 136 F.3d 1414, 1424 (10th Cir. 1998) (holding Government's introducing "certified copies of Oberle's four previous convictions" was sufficient for government to meet its burden under 18 U.S.C. § 3559 of proving those prior convictions by a preponderance of the evidence, where "Oberle offered no evidence to contradict those certified copies"); United States v. Simpson, 94 F.3d 1373, 1380-81 (10th Cir. 1996) (holding that the Government's asserting "certified docket sheet is

_____

[13]     In Cooper, the district court, under 18 U.S. C. § 3559(c), imposed "a life sentence under the federal 'three-strikes' law based on [Cooper's] commission of at least two prior violent felonies."  375 F.3d at 1052.

29

adequate, absent some contradictory evidence by the defendant, to establish the existence of a prior conviction" by a preponderance of the evidence for purposes of enhancing federal sentence); cf. United States v. Johnson, 973 F.2d 857, 861-62 (10th Cir. 1992) (holding Government presented sufficient evidence to prove prior conviction by a preponderance of the evidence, where Government submitted certified copy of revocation of probation based upon the conviction at issue, and where the defendant failed to offer any evidence to contradict the Government's evidence).

The same is true in this case. The Government submitted certified documents indicating David A. was previously adjudicated a juvenile delinquent in Eddy County, New Mexico. And David A. did not assert any evidence suggesting that that juvenile delinquency adjudication did not involve him. In fact, as indicated above, defense counsel strongly suggested in David A.'s presence that he was the same individual adjudicated a delinquent in the Eddy County, New Mexico proceedings.[14] Therefore, the Government met its burden of proving David A.'s prior juvenile delinquency adjudication by a preponderance of the evidence.

---

[14] Although we conclude defense counsel did not waive his argument that the Government had failed to meet its burden of proof in establishing that the David A. that is the subject of these federal proceedings was the same individual adjudicated delinquent in New Mexico courts, we can still consider defense counsel's statement for its evidentiary value.

30

**IV.  Conclusion**

For these reasons, we AFFIRM the district court's decision granting the Government's motion to transfer David A. to the district court to be tried as an adult.